# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:20-CR-273 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| THOMAS HOOVER, | |
| Defendant(s). | |

Presently before the court is Magistrate Judge Brenda Weksler's report and recommendation (ECF No. 87) to grant defendant Thomas Hoover ("Hoover")'s motion to suppress. (ECF No. 54). The government filed objections to the report (ECF No. 97), to which Hoover responded (ECF No. 98).

**I.    Background**

Hoover is charged with being a felon in possession of a firearm. (ECF No. 1). The charge stems from an interaction with Las Vegas Metropolitan Police Department ("LVMPD") officers during a traffic stop. *See generally* (ECF No. 54).

The following facts are uncontested. LVMPD officers Emry and Adkins conducted a traffic stop on a vehicle in which Hoover was a passenger. (ECF No. 87 at 3). The officers approached the car and asked to see both the driver and Hoover's identification, which they provided through Nevada identification cards. (*Id.*) Officer Emry had instructed Officer Adkins to request Hoover's identification before they stepped up to the vehicle. (*Id.*) The officers then asked the driver whether she had ever been arrested, and after she answered yes, asked whether she had been compliant with her probation. (*Id.* at 4). They asked the same questions of Hoover, who also answered yes to both. (*Id.*)

1    The officers then returned to their patrol car to run a records check on the driver. (*Id.* at 5). They learned that she was not a licensed driver. (*Id.*) They then ran Hoover's records, which confirmed he was a felon. (*Id.* at 6). After a brief discussion with their body cameras off, the officers returned to the vehicle and asked for consent to search the car, which the driver granted. (*Id.* at 7–8). The officers then discovered meth and a handgun in the car. (*Id.* at 8). Hoover was later arrested, and the officers ordered the car towed pursuant to LVMPD policy, which also requires an inventory search when a car is towed. (*Id.* at 9).

Hoover has moved to suppress evidence of the handgun on the grounds that the traffic stop was impermissibly prolonged. (ECF No. 54). After an evidentiary hearing and court-ordered supplemental briefing, Magistrate Judge Brenda Weksler issued a report and recommendation that this court should grant Hoover's motion to suppress. (ECF No. 87). The government now objects to that recommendation. (ECF No. 97).

## II.     Legal Standard

This district's magistrate judges are authorized to resolve pretrial matters subject to the assigned district judge's review. 28 U.S.C. § 636(b)(1)(A); *see also* LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3 . . . ."). The reviewing district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); *see also* LR IB 3-2(b).

The district court applies a "clearly erroneous" standard to the magistrate judge's factual findings, whereas the "contrary to law" standard applies to the legal conclusions. *See, e.g.*, *Grimes v. Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). However, if a party files written objections to the report and recommendation, the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* LR IB 3-2(b).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

**III.     Discussion**

Having reviewed the record and report, this court holds that the factual findings are not clearly erroneous and these legal holdings are not contrary to law.  Accordingly, save for a *de novo* review of the government's specific objections leading to the contrary, this court will adopt in full Magistrate Judge Weksler's report and recommendation granting Hoover's motion to suppress.  (ECF No. 87).

To that end, the government objects to three of the report's factual findings and both legal conclusions.  As to the facts, it contends that Magistrate Judge Weksler (1) erroneously concluded that the officers performed a records check solely to determine Hoover's criminal history; (2) did not properly credit Officer Adkins's testimony that Hoover was "unusually nervous;" and (3) incorrectly determined that the officers "more likely than not" failed to follow LVMPD tow policies.  (ECF No. 97 at 20, 24).  The government also objects to both legal conclusions: that Officer Emry unlawfully prolonged the traffic stop and the firearm located in the vehicle would not have been inevitably discovered.  (*Id.* at 10).  The court will address each of these objections in turn.

A.  Factual Findings

> *1. This court adopts Magistrate Judge Weksler's finding that the records check on Hoover was not used to verify his driver's license.*

The government's first factual objection is to the Magistrate Judge's finding that the officers ran a records check on Hoover solely to determine his criminal history.  (ECF No. 97 at 19).  It argues that the officers also ran Hoover's records to determine if he had a valid driver's license and that multiple reasons can exists for a records check—here, both officer safety and confirmation of a driver's license.  (*Id.*)

After a *de novo* review of the record, the court concludes that the officers ran a records check on Hoover solely to determine his criminal history.  Nowhere in the record is there any evidence that the officers sought to confirm the status of Hoover's driver's license.  Indeed, this argument makes less sense considering Hoover handed Officer Adkins a Nevada identification card, not a Nevada driver's license, seemingly already suggesting he did not have a valid driver's

1  license. (ECF No. 72 at 72–73). Further, Officer Emry motioned for Officer Adkins to request
2  Hoover's identification *before* the two had run a records check on the driver. (*Id*. at 15). At that
3  point, there would be no reason to confirm the driver's license of a passenger in a vehicle. The
4  evidence suggests that the officers' explanation for their behavior is pretextual, and that they did
5  not intend to use the records check to confirm the status of Hoover's driver's license. The court
6  agrees with Magistrate Judge Weksler's factual finding as to the purpose of the records check
7  and adopts it.

### 2. *Magistrate Judge Weksler correctly declined to credit Officer Adkins's testimony as to Hoover's alleged nervousness.*

10  The government also objects that Magistrate Judge Weksler improperly disregarded
11  Officer Adkins's testimony that Hoover seemed unusually nervous as Officer Adkins approached
12  the stopped vehicle. (ECF No. 97 at 20). It argues that because the testimony is not specifically
13  controverted by any other evidence, and because the absence of that detail from the police report
14  is not dispositive, Magistrate Judge Weksler improperly failed to credit the testimony. *See* (*id*.)

15  Having reviewed the record *de novo*, the court agrees with Magistrate Judge Weksler's
16  finding that Officer's Adkins testimony about Hoover's nervousness is not credible. Officer
17  Adkins testified that Hoover "seemed a little more nervous than usual." (ECF No. 72 at 113).
18  Other than this single sentence of testimony in the evidentiary hearing, there is no other evidence
19  to support the Officer's presumption. Officer Adkins failed to provide any details as to what
20  made him think Hoover was nervous, did not ever verbalize that thought to his partner during the
21  traffic stop, nor was he the one to suggest inquiring into Hoover's criminal history. In all, other
22  than the officer's own statement, there is nothing in the record to bolster his credibility. The
23  court overrules the government's objection and adopts this factual finding.

### 3. *Magistrate Judge Weksler correctly concluded that the officers more likely than not failed to follow the LVMPD tow policy.*

26  The government's last factual objection is to Magistrate Judge Weksler's finding that the
27  officers "more likely than not" failed to follow the LVMPD's tow policy by failing to consider
28  alternatives to towing the car. (ECF No. 97 at 24). The government argues that (1) it did

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  consider alternatives, and (2) Nevada state law preventing operation of a vehicle without
2  insurance trumps LVMPD policy and prevented anyone from driving the vehicle. (*Id*. at 24–25).

3  Having once again conducted a *de novo* review, the court agrees with Magistrate Judge
4  Weksler. The officers more likely than not did not follow the LVMPD policy when they ordered
5  the vehicle towed. The LVMPD policy states that a vehicle may be impounded only when "there
6  is not a licensed driver in the vehicle and it is not legally parked." (ECF No. 72 at 31–32). The
7  same policy documents also instruct officers that they cannot "permit drivers with suspended or
8  revoked privileges to drive away in their vehicle. Alternatives such as release to a licensed driver
9  or other appropriate action *will be* considered before towing a vehicle." (ECF No. 87 at 9)
10 (emphasis added). The policy is clear: where there is an issue of a suspended or revoked driver's
11 license, officers must consider alternatives before towing the vehicle. The record does not show
12 that Officers Emry and Adkins considered any other alternatives before towing the vehicle.

13 Officer Emry testified that the officers "considered" two alternatives: (1) that they
14 "would always consider seeking to call somebody to come and collect the vehicle" and (2) that if
15 a licensed driver had been present, they would have allowed that driver to move the vehicle.
16 (ECF No. 72 at 62, 66). That testimony is unpersuasive. It operates hypothetically. As
17 Magistrate Judge Weksler put it, "Emry testified that, *had the situation been different*, he *would*
18 *have* considered an alternative to towing." (ECF No. 87 at 10) (emphasis in original). If the
19 only two alternatives considered were hypotheticals conjured in hindsight, the officers could not
20 have complied with a policy that mandates consideration of alternatives contemporaneously.

21 Further, this testimony that Officer Emry would have considered allowing someone to
22 move the car completely belies his assertion that Nevada law prevented anyone from moving the
23 vehicle because of the lack of insurance. This court overrules the government's third objection
24 and adopts Magistrate Judge Weksler's finding that the officers more likely than not failed to
25 follow the tow policy.

26 B.  Legal Conclusions
27 After reviewing the record *de novo* and adopting each of Magistrate Judge Weksler's
28 factual findings over the government's objection, this court now considers the legal conclusions.

James C. Mahan
U.S. District Judge

- 5 -

1   Magistrate Judge Weksler concluded that officers prolonged the stop by both asking probation-
2   related questions and running a records check on Hoover.  (ECF No. 87 at 2).  She also
3   determined that the firearm in question would not have been inevitably discovered.  (*Id.*)

*1. This court agrees that the officers impermissibly prolonged the stop.*

The government objects to Magistrate Judge Weksler's finding that both Officer Emry's probation-related questions and the officers' decision to run a records check on Hoover impermissibly prolonged the stop.  (ECF No. 97 at 10).  After *de novo* review, this court agrees with Judge Weksler; both the probation questions and the records check impermissibly prolonged the stop.

The duration of a traffic stop shall not exceed the time needed to complete "the seizure's mission, [which is] to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations and quotation marks omitted).

However, officers "may conduct certain unrelated checks during an otherwise lawful traffic stop," but they "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355; *see also United States v. Hylton*, 30 F.4th 842, 847 (9th Cir. 2022).  Those unrelated checks can include verifying the driver's license, the automobile's insurance and registration, and determining whether there are any outstanding warrants against the driver. *Rodriguez*, 575 U.S. at 355.  Those checks are permitted because they "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

Here, the officers first extended the stop by asking the driver questions about her probation compliance.  As Magistrate Judge Weksler observed, *United States v. Hoffman* recognized that requesting the probation statuses of suspects during a traffic stop is a prolongation of the stop when there was no reasonable suspicion beyond the traffic violation. 762 F. App'x 397 (9th Cir. 2019).  In *Hoffman*, the stop was permissible, however, because there were facts giving the officer reasonable suspicion to prolong the stop. *See id.*; *Hylton*, 30 F.4th at 847.

**James C. Mahan**
**U.S. District Judge**

- 6 -

This court has adopted Magistrate Judge Weksler's finding that there was no reasonable suspicion of a further violation at the time the officers asked about the driver's probation status. Thus, the questions were not within the mission of the stop; they did not relate to the primary traffic violation, nor were they related to officer safety. *See Rodriguez*, 575 U.S. at 354. This court agrees with Judge Weksler's legal conclusion that the probation-related questions prolonged the stop.

Likewise, the court agrees with Magistrate Judge Weksler that running Hoover's records prolonged the stop.

An officer may conduct a criminal history check as part of traffic stop to ensure officer safety. *Hylton*, 30 F.4th at 846. It is not clear, however, whether that extends to only the driver of the vehicle or to all occupants. The government asserts that *Rodriguez* extends officers the ability to conduct a criminal history check of any of the car's occupants. *See* (ECF No. 97 at 15); *Rodriguez*, 575 U.S. at 356. *Rodriguez* is factually inapposite, however. There, the Supreme Court considered whether a canine search of the vehicle prolonged a traffic stop. While the court did not distinguish between a records check on a driver or a passenger, that was not the question before it.

As Hoover and Magistrate Judge Weksler point out, the Ninth Circuit in *United States v. Landeros* comes much closer to answering this question. *See* 913 F.3d 862, 868 (9th Cir. 2019). There, the court held that demanding a passenger provide identification was not within the mission of the stop. *Id.* Therefore, it follows, particularly after *Rodriguez*'s articulation of the "mission of the stop" test, that if demanding a passenger's identification is impermissible, so to is requesting it. *See id.*; *Rodriguez*, 535 U.S. at 354.[1]

Here, running Hoover's records had no relation to the mission of the stop. It did not relate to the traffic violation and, as the adopted facts establish, the officer had no reasonable

---

[1] The government contends that *United States v. Diaz-Castaneda* binds this court with its holding that officers may request identification from anyone who has been legitimately stopped. *494 F.3d* at 1152. *Diaz-Castaneda* was decided before *Rodriguez* and was specifically called into question by the *Landeros* court. *See Landeros*, 913 F.3d at 870.

**James C. Mahan**
**U.S. District Judge**

- 7 -

suspicion. This court adopts Magistrate Judge Weksler's conclusion that the officers prolonged the stop.

### 2. *This court agrees the firearm would not have been inevitably discovered*

The government also contests Magistrate Judge Weksler's conclusion that the firearm would not have been inevitably discovered in an inventory search. The government argues that regardless of whether the stop was prolonged or not, the evidence should not be suppressed because it would have inevitably been discovered after the car was towed. (ECF No. 97 at 22). Here, after *de novo* review, this court agrees with Magistrate Judge Weksler; the gun would not have been inevitably discovered.

The inevitable discovery doctrine states that otherwise constitutionally inadmissible evidence may be admissible if the government, by a preponderance of the evidence, proves it would have inevitably uncovered the evidence through routine procedures. *See United States v. Young*, 573 F.3d 711, 721 (9th Cir. 2009); *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000).

This court has already adopted Magistrate Judge Weksler's factual finding that the officers likely failed to comply with the LVMPD's tow policy. *See supra,* Sec. A.3. Adoption of that finding dooms the government's argument. Other than the tow policy, the government fails to produce any evidence of another routine procedure by which it would have discovered the firearm. Thus, the court overrules the government's final objection and adopts Magistrate Judge Weksler's conclusion that the firearm would not have been inevitably discovered.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Magistrate Judge Weksler's report and recommendation (ECF No. 87) be, and the same hereby is, ADOPTED in full.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

1    IT IS FURTHER ORDERED that Hoover's motion to suppress (ECF No. 54) be, and
2 the same hereby is, GRANTED.
3    DATED September 2, 2022.

_____
UNITED STATES DISTRICT JUDGE