UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Thomas Ronald Hoover,<br><br>Defendant. | Case No. 2:20-cr-00273-JCM-BNW<br><br>**Order re ECF No. 107** |

On October 6, 2020, Mr. Hoover was charged by indictment with being a felon in possession of a firearm under 18 U.S.C. 922(g) and 924(a)(2).

On January 31, 2022, Mr. Hoover filed a motion to suppress the evidence against him. ECF No. 54. I[1] held an evidentiary hearing on April 19, 2022 (ECF No. 71), and on July 13, 2022, I recommended that his motion to suppress be granted. ECF No. 87. On September 2, 2022, Judge Mahan adopted my findings and granted the motion to suppress. ECF No. 100. The Government filed a notice of appeal under 18 U.S.C. § 3731 on September 12, 2022. ECF No. 102. As a result, Judge Mahan vacated the trial date. ECF No. 105.

On September 30, 2022, Mr. Hoover moved for release pending the appeal outcome, arguing that (1) conditions can be fashioned in this case, and (2) it would violate due process to continue detaining him pending appeal. ECF No. 107. The Government opposed at ECF No. 111.[2] The Court held a hearing on Defendant's motion on October 5, 2022. ECF No. 113.

As discussed below, the Court will grant Mr. Hoover's motion as it finds that conditions can be fashioned in this case to reasonably assure his appearance and the safety of any other person and the community. In addition, this Court agrees with Mr. Hoover that continued detention would violate due process.

//

---

[1] The Order will use both the pronoun "I" and "the Court" to refer to the undersigned's actions and findings.
[2] Because of the expedited briefing schedule, the Court did not allow a reply.

**I.     Analysis**

    **A.     Legal Standard**

Mr. Hoover's request for release is governed by 18 U.S.C. § 3143(c), which provides that "[t]he judicial officer shall treat a defendant in a case in which an appeal has been taken by the United States under section 3731 of this title, in accordance with section 3142 of this title . . . ."

The presumption under the Bail Reform Act of 1984 is that individuals will be released unless no conditions can be fashioned to reasonably assure the appearance of the person as required and the safety of any other person and the community. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). It also requires release under the least restrictive condition or combination of conditions. *See* 18 U.S.C. § 3142(c)(1)(B); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "Only in rare circumstances should release pending trial be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Gebro*, 948 F.2d at 1121 (citing *Motamedi*, 767 F.2d at 1405). On a motion for pretrial detention, the Government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. *Gebro*, 948 F.2d at 1121; *Motamedi*, 767 F.2d at 1406–07.

Section 3142(g) of the Bail Reform Act requires courts to consider four factors to determine whether there are any conditions of release that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). These factors include: (1) the nature and circumstances of the offense charged, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id*.

Before turning to the § 3142(g) factors, the Court will address the Government's argument that there is no new information material to whether conditions of release can be fashioned. The Court does not read 18 U.S.C. § 3143(c) to require such findings. And in any event, Judge Mahan's order affirming the Report and Recommendation would satisfy that prerequisite.

### B. 18 U.S.C. § 3142(g) factors and whether conditions can be fashioned

Consistent with its previous findings, the Court finds that Mr. Hoover is both a danger to the community and a risk of non-appearance. But contrary to its previous orders, the Court finds that the new procedural posture of the case and a re-examination of the § 3142(g) factors establish that there are conditions of release that will reasonably assure the community's safety and the Defendant's appearance.

#### i. Nature and circumstances of the offense charged

Here, Mr. Hoover faces a charge of being a felon in possession of a weapon. This is a serious charge considering his background. Notwithstanding, Mr. Hoover was compliant and cooperative with the police officers during the traffic stop, as evidenced by the body-camera footage. He did not attempt to flee or resist arrest.

#### ii. Weight of the evidence

The weight of the evidence is the least important factor. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)). As the case stands, there is no evidence against Mr. Hoover. As a result, this is a factor weighing in favor of release. *See United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) (explaining that "[i]f the evidence against a defendant is weak, that becomes an important factor favoring release").

Judge Mahan's order granting Mr. Hoover's motion to suppress requires the Government to dismiss this case unless the Ninth Circuit disagrees with his findings. This new procedural posture creates an enormous incentive for Mr. Hoover not to flee, reducing the likelihood of him doing so. While there is no guarantee that Mr. Hoover (or any other defendant for that matter) will

not flee, the Bail Reform Act does not require "ironclad guarantees" but only reasonable assurances. *Chen*, 820 F. Supp. at 1208.

Importantly, Judge Mahan's order significantly impacts my rationale at the July 27, 2022 hearing to reopen detention. Then, I noted that neither Mr. Hoover nor I knew whether the R&R would be adopted. The fact that Mr. Hoover previously absconded made me question whether conditions of release would reasonably assure his appearance. But, as previously discussed, Judge Mahan's order changes the procedural posture of this case and my views on this issue.

### iii. History and characteristics of the person

About a year ago, Mr. Hoover absconded while on release in this case.[3] But, as previously mentioned, the procedural posture of this case significantly reduces the risk of similar future behavior. This is because, as things stand, this case will be dismissed *unless* the Ninth Circuit reverses this Court's findings.

The Court understands that Mr. Hoover has had numerous contacts with the criminal legal system, resulting in a number of convictions. It also takes note of Mr. Hoover's pretrial release violations, which include being arrested on state charges and subsequently failing to appear for a hearing relating to one of those charges. Notably, both state cases have been resolved, with one being dismissed. In this same vein, the Court also acknowledges that Mr. Hoover has an outstanding state battery case from July 2021 that he is currently resolving with the assistance of an attorney.

At the same time, the Court must also take stock of Mr. Hoover's behavior these last 13 months while he has been in custody. He has had no disciplinary violations; he has taken rehabilitative classes, including anger management and victim impact classes; and he has maintained a job working in the Nevada Southern Detention Center's kitchen. ECF No. 107 at 1–2, 13.

---

[3] The Court takes note of Pretrial Services' position in its October 5, 2022 memorandum that Mr. Hoover was in "lengthy absconder status." But, as previously discussed, Judge Mahan's order affirming my recommendation to suppress changes how I evaluate Mr. Hoover's future behavior.

Prior reports indicate that Mr. Hoover has some ties to this community. Although his ties are not particularly strong, the conditions of release the Court will impose do not depend on strong community ties.

The Court further takes note of Mr. Hoover's physical condition. Since being in pretrial detention, Mr. Hoover, who suffers from a blood-clotting disorder, has had multiple trips to the emergency room because of numerous seizures and other ailments, including a high fever, severe rash, swelling, and shortness of breath. His mobility also has been restricted due to his medical conditions.

### iv. Nature and seriousness of the danger to any person or the community that would be posed be the defendant's release

I first must acknowledge that in the past two hearings regarding Mr. Hoover's requests to reopen detention (in May and July of this year), I failed to develop my reasoning as to why no conditions could be fashioned to reasonably assure the community's safety.[4] Rather, I merely adopted the Government's timeline of Mr. Hoover's criminal history and focused instead on Mr. Hoover's prior act of absconding. I recognize and correct my error here.[5]

At Mr. Hoover's initial appearance in this case in October 2020, the Government did not move for detention. Although its decision to do so relied significantly on Mr. Hoover's health, the Court must, nonetheless, take note of this decision. At that time, the Government had knowledge of Mr. Hoover's criminal history and took the position that conditions could be fashioned in this case. In fact, it came to an agreement with the defense and recommended release. The Court agreed and released Mr. Hoover on a personal recognizance bond. ECF Nos. 6, 10.

---

[4] I also must note that at the October 5, 2021 hearing regarding pretrial release revocation, I ordered Mr. Hoover detained because there was clear and convincing evidence that he violated conditions of release (in light of his admissions) and that he was unlikely to abide by any condition or combination of conditions of release under 28 U.S.C. § 3148(b)(1)(B) and § 3148(b)(2)(B). ECF No. 33. I did not make any findings regarding his risk of non-appearance or danger to the community. *Id*.

[5] I further recognize that the Court's detention order dated September 28, 2021 failed to fully develop how no conditions could be fashioned to ensure the safety of any other person or the community. ECF No. 31. Although the boxes for "history of violence or use of weapons," "prior criminal history," and "participation in criminal activity while on probation, parole, or supervision" were selected, no additional analysis was provided.

It is true that circumstances changed since Mr. Hoover's initial appearance. As already noted, since then, Mr. Hoover was arrested on three state charges. Of note, one of the charges for domestic battery related to an alleged incident from February 2020, which was several months *before* Mr. Hoover was indicted in this case. Moreover, the state subsequently dismissed that charge. The second battery offense for which he was arrested also took place before the instant indictment. The last charge—possesses/receives/transfer stolen vehicle—was resolved in February of this year.

The information before the Court regarding these new charges does not result in a finding that no conditions can be fashioned to assuage the danger Mr. Hoover poses to the community. As noted, the battery offenses precede the date of this indictment, and the possession of stolen property charge is a relatively minor offense and non-violent in nature.

Ultimately, there is never a guarantee that a defendant will not pose a danger to the safety of the community but, as previously noted, the Bail Reform Act does not require guarantees even where the issue is the safety of the community. *Chen*, 820 F. Supp. at 1208 (citing *United States v. Tortora,* 922 F.2d 880, 884 (1st Cir. 1990)).

### v. Conclusion

On balance, considering the changed circumstances and a renewed review of the record, the Court finds that the Government has not shown by clear and convincing evidence that no condition or combination of conditions absent full detention will reasonably assure the safety of any other person and the community. Nor has it shown by a preponderance of the evidence that conditions cannot adequately address the risk of Mr. Hoover's non-appearance. This is a close call considering the Court's previous findings. But the law requires that close calls be resolved against detention. *Gebro*, 948 F.2d at 1121 (citing *Motamedi*, 767 F.2d at 1405) ("Only in rare circumstances should release pending trial be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor.").

//

//

### C. Due Process Violation

The defense also argues that release is required because further detention constitutes a due-process violation. ECF No. 107 at 14–16. The Government disagrees. ECF No. 111 at 15–16.

"It is clear that long pretrial detentions, at least in some circumstances, can violate the Due Process Clause of the Fifth Amendment of the Constitution of the United States." *United States v. Ailemen*, 165 F.R.D. 571, 577 (N.D. Cal. 1996) (citations omitted). Specifically, "[t]he constitutional ban on excessive pretrial detention can be understood as a right guaranteed by substantive due process." *Id*. This is to mean that the government may detain an individual prior to trial so long as the confinement does not amount to "punishment of the detainee." *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *see also Salerno,* 481 U.S. at 746 (stating that pretrial detention must be "regulatory, not penal").

Determining whether pretrial detention constitutes a due process violation is case-specific. *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) (citing *United States v. Gonzales–Claudio,* 806 F.2d 334, 340 (2d Cir. 1986)). The Ninth Circuit has held that courts must weigh three factors in evaluating whether a due-process violation has occurred: (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021).

The defense argues that all three factors weigh in favor of finding a due process violation whereas the Government submits that none of the factors support such a finding. *Compare* ECF No. 107 at 14–16 *with* ECF No. 111 at 15–16.

#### i. Length of pretrial detention

Mr. Hoover has been detained 13 months, and he will continue to be detained for at least four more months pending the appeal. That is, absent any continuances, briefing will be completed on February 1, 2023.

Per the Ninth Circuit's website, if oral argument is granted, it will take place about four–to–five months after briefing is complete. The court will then need about three months-to-a-year

to issue a decision. Relying on the low-end of the timelines, Mr. Hoover will be detained for—*at best*—11 *more* months before a decision is made (i.e., four months for briefing; four months for oral argument; and three months to issue a decision).

Neither the U.S. Supreme Court nor the Ninth Circuit has provided a *per se* point in time that pretrial detention "in a particular case might become excessively prolonged and violate due process." *Gelfuso*, 838 F.2d at 359–60. Although the Court cannot determine with certainty Mr. Hoover's release date, it is clear that he will be detained for a significant period given the Ninth Circuit's case load.

Both the defense and Government represented at the October hearing that, under the sentencing guidelines, Mr. Hoover is facing a potential sentence of 30to–37 months if the Ninth Circuit reverses and remands the case (and between 37 and 46 months if Mr. Hoover proceeds to trial and is found guilty). If Mr. Hoover remains detained during the pendency of the appeal, he will have served *at minimum* 24 months. This would amount to having served between 52 and 80 percent of his sentence. *See United States v. Shareef,* 907 F. Supp. 1481, 1484 (D. Kan. 1995) ("[F]undamental fairness requires that defendants, presumed innocent, not be required to serve a major portion of the sentence to which [they] would be subject prior to a determination of guilt."). Considering the Bureau of Prison's guidelines regarding good-time credit, Mr. Hoover would—for all intents and purposes—have served his sentence even before the case is to commence anew. And worse, his detention would continue while the second round of litigation unfolds before the district court. Such a prolonged detention would shift from being regulatory to penal. *See Salerno,* 481 U.S. at 746 (stating that pretrial detention must be "regulatory, not penal").

      **ii.**  **Prosecution's contribution to delay**

As to the reasons for delay, the Court recognizes that there have been, as the defense conceded at the hearing, several stipulations to continue deadlines.

The first three stipulations were filed by defense counsel on November 4, 2020; January 19, 2021; and June 6, 2021—all while Mr. Hoover was free on a PR bond.[6] ECF Nos. 13, 19, and

---

[6] The Court notes that a petition for warrant on conditions of pretrial release (at ECF No. 23) was filed on the same day as the third stipulation. *Compare* ECF No. 23 *with* ECF No. 22.

22. They were filed to accommodate defense counsel's need for additional time to investigate and research potential pre-trial issues to be litigated. *Id*. The fourth and fifth stipulations were filed by defense counsel on October 20, 2021 and December 16, 2021. ECF Nos. 39, 51. Mr. Hoover was detained during this period. *Id*. at 2. Defense counsel explained that a continuance was necessary so that she could communicate with Mr. Hoover and conduct additional investigation and research. *Id*.

The next set of stipulations involved the motion to suppress, including continuing the evidentiary hearing (due to a scheduling conflict with defense counsel),[7] continuing the deadline for the Government to respond (because of a change in Government counsel), and continuing the deadline for defense counsel to reply (because of time needed to investigate the issues). ECF Nos. 57, 58, and 66. During this time and because of the pending motion to suppress, there were two additional stipulations to continue the trial date. ECF No. 64, 83.

### iii. Evidence supporting detention under the Bail Reform Act

As discussed above, the 18 U.S.C. 3142(g) factors weigh in favor of finding a due process violation. The Court finds that Mr. Hoover is a risk of non-appearance and a danger to the community but that conditions can be fashioned to reasonably assure his appearance at future court proceedings and the community's safety. This has been discussed at length above.

### iv. Conclusion

On balance, the Court finds that unless the Court releases Mr. Hoover, his prolonged detention will constitute a due process violation. Of note, there have been *two* findings—by the undersigned and the District Judge—that Mr. Hoover's constitutional rights have been violated and that the evidence should and will be suppressed. These findings would ordinarily result in the dismissal of the criminal case. And while the Government should certainly pursue its appeal before the Ninth Circuit if it believes there have been erroneous findings, it would be a violation of due

---

[7] The Court initially scheduled the evidentiary hearing for March 23, 2022. Defense counsel asked for a continuance of at least seven days. ECF No. 57 at 1. Because of various calendar conflicts, the Court rescheduled the hearing to April 19, 2022. ECF No. 60 at 3. The Court recognizes its role in delaying this action. It also recognizes that the time it took to issue a Report and Recommendation following the evidentiary hearing for the suppression motion and subsequent supplemental briefing further delayed this action.

process in this case for Mr. Hoover to remain detained while the Government exercises its appellate rights. *See United States v. Ailemen*, 165 F.R.D. 571, 578 (N.D. Cal. 1996) ("[T]hese indisputably fundamental rights—the right to a speedy trial, the protection against excessive bail, the presumption of innocence—all would be empty pronouncements, full of sound and fury but signifying nothing, for a defendant who could be imprisoned indefinitely while awaiting trial.").

## II.   Conclusion and Order

**IT IS THEREFORE ORDERED** that Defendant Thomas Ronald Hoover's Motion for Release Pending Appeal (ECF No. 107) is GRANTED.

**IT IS FURTHER ORDERED** that Mr. Hoover is ordered to be released immediately to the federal halfway house pending the Ninth Circuit's decision on the appeal.

**IT IS FURTHER ORDERED** that in addition to any mandatory statutory conditions that Pretrial Services must communicate to Mr. Hoover within 48 hours of release, Mr. Hoover

- shall report to U.S. Pretrial Services for supervision;
- shall satisfy all outstanding warrants and provide verification to Pretrial Services or the supervising officer;
- shall use his true name only and shall not use any false identifiers;
- shall abide by the following restrictions on personal association, place of abode, or travel: Travel is restricted to Clark County, NV;
- shall maintain or actively seek lawful and verifiable employment if medically cleared to work, and notify Pretrial Services or the supervising officer prior of any change;
- shall refrain from possessing a firearm, destructive device, or other dangerous weapons.

DATED: October 6, 2022.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE